{¶ 35} The arbitration clause in the Ohio Uninsured Motorists Coverage — Bodily Injury endorsement portion of the Gabriels' insurance policy provides that any dispute between the parties can be arbitrated with one exception. That endorsement specifically states that "disputes concerning coverage under this endorsement may not be arbitrated." The majority concludes that this exception does not apply in this case because it finds "absolutely no evidence" that Westfield ever disputed whether the Gabriels were covered under the policy. I must respectfully disagree. The correspondence between Westfield and the Gabriels' attorney shows that Westfield never conceded the issue of coverage. Therefore, the trial court erred when ordering that the parties arbitrate the matter without delay.
 {¶ 36} In order to determine whether the correspondence in the record reveals that Westfield was disputing coverage, we must first examine the coverage provided by the endorsement. The Ohio Uninsured Motorists Coverage — Bodily Injury endorsement provides:
 {¶ 37} "A. Coverage
 {¶ 38} "1. We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or operator of:
 {¶ 39} "a. An `uninsured motor vehicle' as defined by Paragraph F.3.a., b. and c. because of `bodily injury':
 {¶ 40} "(1) Sustained by the `insured'; and
 {¶ 41} "(2) Caused by the `accident'.
 {¶ 42} "* * *
 {¶ 43} "The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the `uninsured motor vehicle'.
 {¶ 44} "* * *
 {¶ 45} "F. Additional Definitions
 {¶ 46} "As used in this endorsement:
 {¶ 47} "* * *
 {¶ 48} "3. `Uninsured motor vehicle' means a land motor vehicle or trailer:
 {¶ 49} "a. For which no liability bond or policy at the time of an `accident' provides at least the amounts required by the applicable law where a covered `auto' is principally garaged;
 {¶ 50} "b. Which is an underinsured motor vehicle. An `underinsured motor vehicle' means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of the `accident' provides at least the amounts required by the applicable law where a covered `auto' is principally garaged but their limits are less than the Limit of Insurance of this coverage.
 {¶ 51} "c. For which an insuring or binding company denies coverage or is or becomes insolvent; * * *.
 {¶ 52} "However, `uninsured motor vehicle' does not include any vehicle:
 {¶ 53} "* * *
 {¶ 54} "c. Owned by any government unit or agency, unless the owner or operator of the `uninsured motor vehicle'; has
 {¶ 55} "(1) An immunity under Ohio Poitical Subdivision Tort Liability Law; or
 {¶ 56} "(2) A diplomatic immunity."
 {¶ 57} The policy defines the limit of insurance as follows:
 {¶ 58} "D. Limit of Insurance
 {¶ 59} "1. Regardless of the number of covered `autos,' `insureds,' premiums paid, claims made or vehicles involved in the `accident,' the most we will pay for all damages resulting from any one `accident' is the limit of Uninsured Motorists Coverage shown on the Schedule or Declarations.
 {¶ 60} "2. No one will be entitled to receive duplicate payments for the same elements of `loss' under this Coverage Form and any Liability Coverage Form.
 {¶ 61} "We will not make a duplicate payment under this Coverage Form for any element of `loss' for which payment has been made by or for anyone who is legally responsible.
 {¶ 62} "3. With respect to coverage provided under Paragraph F.3.b. of the definition of `uninsured motor vehicle', the limit of insurance shall be reduced by all sums paid for `bodily injury' by or on behalf of anyone who is legally responsible."
 {¶ 63} Thus, this policy only provides coverage in accidents involving underinsured vehicles. A vehicle is underinsured if the vehicle involved in the accident was either not insured in at least the amounts required by the applicable law, insured in an amount less than the limit of insurance provided by this endorsement, or insured by a company that denied coverage or became insolvent.
 {¶ 64} Many of the letters in the record reflect Westfield's investigation into whether this really was an uninsured or underinsured motorist accident. For instance, on June 19, 2002, Westfield notified the sheriff's department that it was negligent and asked for the department to contact its insurance carrier. Subsequent correspondence between Westfield and the Gabriels' counsel showed that they believed the sheriff's department would assert governmental immunity and on September 10, 2002, the department stated that it would assert that immunity. In addition, the Gabriels' attorney notified the owner of the stolen car that he may be liable and asked him to contact his insurance carrier.
 {¶ 65} Furthermore, Westfield continued to ask the Gabriels' attorney for additional information regarding whether the potential tortfeasors were insured. A letter sent to the Gabriels' attorney on March 27, 2003, followed up on a January 9, 2003, letter requesting medical information. That letter referred to the Gabriels' claim as a uninsured motorist claim and asked the Gabriels to advise Westfield if they had "heard from any other parties" and whether "there is other coverage from any of the tortfeasors." Westfield sent this same letter to the Gabriels' attorney on April 24, 2003, May 23, 2003, and June 13, 2003.
 {¶ 66} In its correspondence, Westfield consistently asks for information, both from possible tortfeasors and its insureds that would prove that this accident is not an underinsured motorist accident. This inquiry would be unnecessary if Westfield was not disputing whether the accident was a covered accident under the policy. The evidence in the record shows that Westfield was not conceding coverage on this claim.
 {¶ 67} Finally, there is no evidence in the record showing that the Gabriels' claim is actually covered by their policy with Westfield. For example, there is no evidence reading whether that vehicle was insured. Likewise, the local police department may assert immunity under Ohio's Political Subdivision Tort Liability Act. But there are exceptions to the immunity this Act provides and it is impossible at this time to tell whether those exceptions apply in this case. Either scenario may provide insurance greater than or equal to the amount provided in this policy. If the amount of insurance available through those other avenues is greater than or equal to the amount provided in this policy, then the accident is not covered by the policy. The Gabriels failure to introduce any evidence demonstrating that the coverage issues between the parties have been resolved cannot be excused by Westfield's failure to respond to the Gabriels' motion.
 {¶ 68} The endorsement provides that "disputes concerning coverage under this endorsement may not be arbitrated." In this case, there is a valid dispute over whether the policy covers the injury. Thus, the trial court could not compel arbitration on these issues. For these reasons, the trial court abused its discretion when compelling the parties to submit to arbitration. Westfield's arguments are meritorious. The trial court's judgment should be reversed and this cause should be remanded for further proceedings.